UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| SHERRY HALE | * | CIVIL ACTION NO.  16-0930 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Sherry Hale protectively filed the instant application for Title XVI Supplemental Security Income payments on March 28, 2012.  (Tr. 117, 267-274, 307).[1]  She alleged disability as of June 1, 2009, because of mental problems, back problems, and general poor health.  (Tr. 307, 311).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 117-127, 143-146).  Thereafter, Hale requested and received a December 20, 2012, hearing before an Administrative Law Judge ("ALJ").  (Tr. 61-74).  However, in an April 10, 2013, written decision, the ALJ determined that Hale was not disabled under the Social Security Act,

---

[1]  Hale received disability payments in the past.  However, they were discontinued because her husband's income rendered her ineligible for SSI.  Hale filed prior applications on June 3, 2005, and January 26, 2011.  (Tr. 118).  The former was denied initially, and not further appealed.  *Id.*  The latter application was denied by an Administrative Law Judge on September 21, 2011, and apparently not further appealed.  (Tr. 118, 104-113).

finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a telemarketer, both as she actually performed it, and as the job generally is performed in the national economy. (Tr. 128-136). Hale appealed the adverse decision to the Appeals Council. On June 20, 2014, the Appeals Council granted Hale's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 140-142).

On remand, a supplemental hearing, was held on April 16, 2015, before a different ALJ. (Tr. 75-103). In a June 24, 2015, written decision, the ALJ determined that Hale was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to past relevant work, or alternatively at step five, that she could make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 42-56). Hale again appealed the adverse decision to the Appeals Council. On May 10, 2016, however, the Appeals Council denied Hale's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-4).

On June 27, 2016, Hale filed the instant complaint for judicial review of the Commissioner's decision. She asserted four assignments of error in her brief, which are aggregated and succinctly restated, as follows:

(1)    the ALJ's step two finding that plaintiff's mental impairments of depression and anxiety are non-severe is not supported by substantial evidence;

(2)    the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(3)    the ALJ legally erred in his step four and alternative step five findings because he did not pose a hypothetical that included all of plaintiff's limitations, and by his failure to inquire about transferrable skills.

**<u>Standard of Review</u>**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa*

2

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the

SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **ALJ's Findings**

## **I.    Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did

not engage in substantial gainful activity during the relevant period. (Tr. 47). At step two, he found that the claimant suffered severe impairments of osteoarthritis, allied disorders, and other disorders of the bone/cartilage (osteoporosis). (Tr. 47-48).[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 49).

## II.    Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[3] except that she was limited to frequent fingering and handling with the right upper extremity. (Tr. 49-54).

## III.    Steps Four and Five

At step four, the ALJ employed a vocational expert ("VE") to find that Hale was able to return to her past relevant work as a telemarketer (apparently as the job is generally performed in the national economy). (Tr. 54-56).[4]

---

[2]  He determined that the claimant's medically determinable mental impairments of depression and/or anxiety were non-severe. *Id*.

[3]  Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4]  Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling

The ALJ also proceeded to make an alternative step five finding.  At this step, the ALJ determined that the claimant was a "younger" individual at the time she filed the application, but then changed age category to "closely approaching advanced age."  (Tr. 55-56).  She also had a limited education with the ability to communicate in English.  *Id*.  Transferability of skills was immaterial.  *Id*.

The ALJ then observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled.  20 C.F.R. § 404.1569; Rules 202.18 and 202.11, Table 2, Appendix 2, Subpart P, Regulations No. 4.  *Id*.  However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for light work.  *Id*.  In response, the VE identified the representative job of gate guard – light, *Dictionary of Occupational Titles* ("DOT") Code # 372.667-030, that was consistent with the ALJ's RFC and the claimant's vocational profile.  *Id*.[5]

## Analysis

### I.    Step Two

Plaintiff contends that the ALJ erred when he determined that her medically determinable mental impairment(s) of depression and/or anxiety was  non-severe.  In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it

---

82-61).

[5]  The VE responded that there were 8,860 positions regionally, and 595,000 positions nationwide.  (Tr. 56, 99-100).

would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)).  However, when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required.  *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987).  Indeed, once a severe impairment is determined to exist, *all* medically determinable impairments must be considered in the remaining steps of the sequential analysis.  *See* 20 C.F.R. §§ 416.945(a)(2) & 416.920(e).

Here, the ALJ recited the foregoing regulations, and proceeded to consider the medical record and the aggregate impact of plaintiff's impairments.  *See* Tr. 46-54, and discussion, *infra*. Thus, the critical issue becomes whether the ALJ's RFC is supported by substantial evidence.[6]

## II.    Residual Functional Capacity Assessment

a)    Chronology of Relevant Medical Evidence

The court pauses to recognize that the relevant period in this case begins no earlier than the date that plaintiff filed her application for Title XVI payments, i.e., March 28, 2012,[7] and

---

[6]  The ALJ's failure to recognize an impairment as severe also could have ramifications for his step three determination.  However, plaintiff did not argue that her impairments meet or equal a listing.

[7]  The earliest that a Title XVI claimant is eligible for payments is one month after the application is filed.  20 C.F.R. § 416.335.  However, the Commissioner generally will develop the claimant's medical history for at least 12 months preceding the month that the claimant filed her application.  20 C.F.R. § 416.912(b)(1).

extends until June 30, 2016, the day before the July 1, 2016, effective date of a favorable award pursuant to a subsequent application for benefits filed by plaintiff. *See* Pl. Brief, pg. 1.

　　　i)　　　*Evidence before the Latest ALJ*

On March 25, 2009, Louisiana Rehabilitation Services referred Hale to physical therapist Jay Manning for a general physical capacity examination. (Tr. 419-423).[8] Hale reported that she wanted to be trained or educated in something to make more money, but did not know what. *Id*. Range of motion was normal for left upper and bilateral lower extremities, lumbar spine and cervical spine. *Id*. Hale exhibited 5/5 strength in all areas except for her right upper extremity which was 4+/5. *Id*. Her right grip strength was 25 pounds, and left grip strength was 50 pounds. *Id*. Manning stated that Hale would be limited to occasional squatting, kneeling, climbing, and reaching with the right upper extremity. *Id*. Bending was limited to frequent. *Id*. Standing, walking, sitting displayed no limitations. *Id*. Lifting and carrying were limited to fifteen pounds occasionally and ten pounds occasionally. *Id*. Manning opined that Hale was suited for work at the sedentary physical demand level, and could return to her former job. *Id*. Her condition was progressive. *Id*.

On December 17, 2010, Hale was seen at E.A. Conway Hospital for follow-up of right hand pain. (Tr. 381). She described her pain as a 6/10. *Id*.

A January 24, 2011, bone scan of the right arm showed mild arthritic changes in the right elbow and wrist, probably an old compression fracture at T7 or 8 level, and traumatic changes in the right second toe. (Tr. 391).

An April 28, 2011, follow-up note from the Thompson Neurology Clinic indicated that she was doing well with diagnoses for right upper extremity pain and dysfunction. (Tr. 376).

_____

[8] Although not relevant to the period at issue given plaintiff's progressive symptoms, the court includes Manning's assessment in the medical record chronology because the ALJ addressed the report in his decision.

On November 23, 2011, Hale was seen at the orthopedic clinic for complaints of neck and back pain. (Tr. 367). Nonetheless, she demonstrated a full range of motion in her cervical spine, both shoulders, elbows, and wrists. *Id*.

On February 16, 2012, F.D. Mistry, M.D., noted, *inter alia*, that plaintiff had low back pain. (Tr. 366).

At the request of the state agency, Hale underwent a consultative physical examination with Jessica Caraway, M.D., on June 23, 2012. (Tr. 404-407). Hale reported that she suffered from a mental condition, back problems, and poor health. *Id*. She complained of pains in her neck, back, and right hand pain. *Id*. She explained that neck pain at the base of her head hurt the worst. *Id*. She complained of depression because of disfigurement and the recent loss of family members. *Id*. She could sit in a chair as long as she wanted to, but experienced neck pain. *Id*. Hale denied mood changes, suicidal ideation, nervousness, anxiety, difficulty concentrating, or sleeping at night. *Id*.

Examination revealed decreased range of motion of the right shoulder due to contracture. *Id*. Hale also had decreased range of motion of the lumbar spine and painful range of motion of the neck to the right. *Id*. Her gait/station was normal, with the ability to rise from a sitting position without assistance, stand on tiptoes, heel and tandem walk without problems. *Id*. She also could bend and squat without difficulty. *Id*. She demonstrated 5/5 strength with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. *Id*. However, her third digit "catches" with bending. *Id*. She appeared depressed or anxious. *Id*. She exhibited 5/5 motor strength in all muscle groups. *Id*.

Caraway diagnosed musculoskeletal neck pain, low back pain, and depression. *Id*. She believed that Hale could sit, walk, and/or stand for a full workday, lift/carry objects without limitations, hold a conversation, respond appropriately to questions, carry out and remember

instructions.  *Id*.  Nonetheless, Caraway recommended a psychiatric evaluation.  *Id*.

On July 12, 2012, non-examining agency psychologist, Tom Ray, Ph.D., reviewed the record, which, at that time, had no treatment for mental impairments, and agreed that Hale's mental impairment was non-severe.  (Tr. 410).

On July 19, 2012, Hale returned to neurologist Lowery Thompson, M.D., for follow-up.  (Tr. 414-416).  He noted, *inter alia*, that Hale had cervical, thoracic, and lumbar back pain, right hand pain, arthritis, severe burn of the right shoulder with scarring and contracture, trigger finger phenomenon on the right, chronic flexion of the right fifth digit, and depression with treatment.  *Id*.  Thompson indicated that Hale had tried occupational therapy before, without much success.  *Id*.  She continued to experience hand, neck, mid-spine, and low back pain.  *Id*.

Upon examination, Hale had some tenderness in the right wrist, hand, shoulder, and along the length of the spine.  *Id*.  Thompson noted that a January 10, 2012, impairment inventory indicated that she could sit for eight hours per day, "stand to walk" eight hours per day, but never lift and carry in competitive work situation any amount of work at all during an eight hour day.  *Id*.  She frequently could stoop and bend, but never finger, grasp, or handle items.  *Id*.  Her pain was severe enough to frequently interfere with her attention and concentration.  *Id*.  The "main signs and symptoms" included sensory loss, muscle weakness, and reduced range of motion.  *Id*.  Thompson noted that her impairment caused Hale to be absent more than four days per month, and that had not really changed.  *Id*.  Thompson stated that Hale appeared to be significantly impaired by her right upper extremity dysfunction which was related to old burn scarring, decreased range of motion and pathology in the wrists and fingers, which were at least arthritis, with possibly an inflammatory component.  *Id*.

On February 22, 2013, Hale returned to Dr. Mistry with complaints of elevated cholesterol, osteopenia, and depression.  (Tr. 453-454).  An x-ray of the right hand showed

flexion deformity and osteoporosis in the fifth finger. *Id*. A right wrist x-ray showed minor osteoarthritis with no fracture. *Id*. Mistry diagnosed plaintiff with depression, osteopenia, and hypercholesterolemia. (Tr. 457). He prescribed BuSpar and Doxepin. *Id*. She was to return in six months. *Id*.

On August 28, 2013, Hale returned to Dr. Mistry for follow-up on depression and hypercholesterolemia. (Tr. 473). She had no joint tenderness, deformity or swelling. *Id*. She was doing well. *Id*. Diagnoses included depression and hypercholesterolemia. *Id*. Mistry refilled her BusPar and Doxepin and directed her to return in 15 months *because there were no open slots before then*. (Tr. 476).

On November 14, 2014, Hale saw Johnathan Baines, M.D., as a new patient. (Tr. 480-483). Her chief complaint was that she wanted to receive medication for anxiety and depression, plus tailbone pain. *Id*. Her pain had started about one year earlier. *Id*. She reported excessive anxiety and worry. *Id*. She had high irritability, depression, and insomnia. *Id*. She exercised regularly, was able to perform light activity, and walk. *Id*. Baines diagnosed depression with anxiety, dyspnea, and tailbone pain. *Id*.

A December 11, 2014, x-ray of the sacrum/coccyx showed mildly osteopenic bones, but otherwise essentially unremarkable. (Tr. 484).

Hale returned to Dr. Baines on December 12, 2014, for follow-up. (Tr. 487-489). Her mood was somewhat improved with the BuSpar. *Id*. She reported less stress and anxiety. *Id*. Baines diagnosed muscle spasm, peripheral neuropathy, probable COPD, and depression with anxiety. *Id*.

On January 16, 2015, Hale again was seen by Dr. Baines. (Tr. 490-492). She reported that her tailbone pain was better, but she was experiencing more pain in her shoulder that radiated to her neck. *Id*. The increased BuSpar was working great, and her mood and anxiety

11

were better. *Id.* However, depression was still present, with a lot of stress at home. *Id.* She was able to cope "okay." *Id.* Upon examination, she exhibited normal motion of the shoulders, with no tenderness. *Id.* Baines diagnosed acute sinusitis, depression with anxiety, and allergic rhinitis. *Id.*

    ii)    *Evidence before the Appeals Council*[9]

On October 24, 2014, Hale was seen at Monroe Behavioral Health. (Tr. 496-500). She reported that Dr. Mistry would not provide her with BuSpar. *Id.* She had been off the medication for about one year. *Id.* She had a history of bad marriages. *Id.* She cried all the time. *Id.* She experienced a lot of stress with her daughter, and a lot of anger with her. *Id.* She also had a lot of anger and could not handle people. *Id.* She had not gotten over her mother's passing from three years earlier. *Id.* Her medication helped to calm her down. *Id.* She lost her job when her boss was caught with insurance fraud. *Id.* She had been fighting disability for three years. *Id.* The social worker diagnosed major depressive disorder, recurrent, moderate and anxiety disorder, NOS. *Id.* Hale had a **moderate** impairment in her ability to function. *Id.*

On April 28, 2015, Hale returned to Monroe Behavioral Health Clinic for a psychiatric evaluation administered by Debora Murphy, M.D. (Tr. 510-512). Her chief complaint was that she was depressed; she hated to cry; and she became aggravated and mean when defensive. *Id.* She reported to behavioral health in part due to court expectation that she seek help and intervention. *Id.* She had almost complete social withdrawal. *Id.* She cried through much of the interview and displayed quick irritability in defense of her family. *Id.* She reported that her medication helped, but it did not prevent her from going off on others or becoming angry. *Id.*

---

[9] Plaintiff provided additional medical records to the Appeals Council. (Tr. 6-36). However, the court will not recite them here. The records post-date the ALJ's decision, pertain to a later-acquired impairment, and apparently provided the basis for a favorable decision associated with a subsequent application for benefits.

She was alert, and oriented to person, place and time.  *Id*.  She had good situational awareness.

*Id*.  Her mood was okay.  *Id*.  She had a thought process disorder, with some ruminative

obsessional preoccupation present.  *Id*.  She also had a paranoid/persecutory expectation of being

hurt.  *Id*.  She exhibited but minimal impairment in concentration.  *Id*.  Her memory remained

intact.  *Id*.  Her impulse control was poor based on her interactions with others.  *Id*.  Insight and

prognosis were fair.  *Id*.  The diagnostic axis portion of the form remained blank.  *Id*.

     b)     <u>Discussion</u>

     In his decision, the ALJ reviewed the available evidence, including the hearing

testimony, plaintiff's activities of daily living, treatment records, the impressions of plaintiff's

treating physicians, the consultative physician, and the assessment of the non-examining agency

psychologist.  (Tr. 48-54).  In deriving plaintiff's *physical* RFC, the ALJ resolved the opinion

evidence as follows,

> [t]he State agency SDM examiner is neither an acceptable medical source nor an
> acceptable non-medical source as described in SSR 06-3p.  Therefore their
> opinion has not been weighed.  Medical source statement from Jay Manning, PT,
> predates the alleged onset date and is considered not relevant to the period at
> issue.  Moreover, the record is absent objective findings to support this
> assessment.  Therefore, the undersigned accords it **no weight**.  While Dr.
> Thompson's treatment note dated July 2012 refers to a medical source statement,
> it is unclear who offered this opinion.  Thus, the undersigned accords this opinion
> **no weight**. The overall record does not support Dr. Caraway's assessment.  While
> Dr. Caraway found no limitations secondary to any medically determinable
> impairment, diagnostic studies revealed osteopenia and arthritis about the right
> upper extremity and minimal chronic compression at T8 without cord
> impingement or cord abnormality.  Moreover findings on examination throughout
> the record reveal at least occasional tenderness about the right upper extremity,
> reasonably limiting the claimant to lifting and carrying no more than 10 pounds
> frequently and 20 pounds occasionally and frequent fingering and handling with
> the right upper extremity.  The record also indicates some back pain, which could
> be exacerbated by work activities above the "light" level of exertion.  Thus, the
> undersigned accords Dr. Caraway's opinion **no weight**.

(Tr. 54) (internal record citations omitted) (emphasis added).

     Plaintiff argues that the ALJ's RFC is not supported by substantial evidence, among other

reasons because he declined to adopt the opinion of her treating physician, Dr. Thompson. Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'"  *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted).  However, an ALJ cannot reject a medical opinion without an explanation supported by good cause.  *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

Here, the ALJ discounted the limitations recognized by Dr. Thompson on the basis that it was unclear who completed the underlying inventory assessment.  However, as plaintiff emphasized in her brief, the identity of the person who completed the assessment is not vital when it is apparent that Dr. Thompson endorsed the limitations.  Thus, the ALJ's explanation for discounting Dr. Thompson's opinion does not hold water.

Furthermore, the Fifth Circuit has remarked that, "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis added).  In this case, while there was competing medical evidence from another examining physician (Dr. Caraway), the ALJ determined that the record did not support her assessment, and therefore, accorded it no weight. At that point, there was no other *reliable* evidence from a treating or examining physician that controverted the impressions of Dr. Thompson.  Thus, the ALJ was obliged to address each of

14

the § 404.1527(d)(2) (now § 404.1527(c)) factors with respect to Dr. Thompson's opinion. This, he did not do.

In addition, once the ALJ determined to assign "no weight" to the opinions of both the treating and consultative physicians, he effectively stripped the record of any assessment of the effects of plaintiff's physical impairments by an acceptable medical source. Instead, it is apparent that the ALJ autonomously derived Hale's physical RFC, without the benefit of a supportive medical opinion.[10]

In *Ripley v. Chater*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court could not determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid

---

[10] This is not a situation where the ALJ assigned "limited weight" to a physician's more benign opinion and then generously assigned greater limitations of functioning based on the claimant's testimony or subsequent treatment records. Here, the ALJ gave "no weight" to the physicians' opinions.

In her brief, the Commissioner argued that the ALJ's RFC was supported by an April 27, 2011, consultative examination administered by David Hebert, M.D. (Def. Response, pg. 8). However, Dr. Hebert examined plaintiff almost one year before the date of the current application. Moreover, the ALJ did not mention Hebert's findings in his decision – likely because Hebert's report does not even appear in this record. Rather, Hebert's findings are summarized by the disability examiner and in an ALJ's decision regarding plaintiff's prior claim. *See* Tr. 119, 111.

of a medical source statement that supports the ALJ's physical RFC.  Moreover, plaintiff's own testimony was not consistent with the ALJ's RFC.  (Tr. 67, 81, 86, 90-92, 95).  Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where:  no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

As for plaintiff's mental impairments, the ALJ assigned great weight to Tom Ray's (the state agency psychologist) opinion that they were non-severe.  (Tr. 54).  In so doing, the ALJ noted that the record showed no treatment by a *mental* health professional, and that although she actually received medication for her mental impairments, the impairment must have been mild because she was not directed to return until after 15 months.  *Id*.

The court observes, however, that Dr. Ray issued his opinion in July 2012 – well *before* plaintiff began receiving treatment for her mental impairments.  Moreover, Dr. Mistry directed plaintiff to return in 15 months – not because he believed her impairments were mild — but because there were no open slots before then.

Furthermore, the ALJ acknowledged plaintiff's testimony that she had attended Monroe Mental Health on three occasions, but that, according to her attorney, the records had been lost. (Tr. 48).  The ALJ surmised that the treatment must have occurred prior to the alleged onset date.

*Id.* However, according to the facsimile machine transmission date stamps, plaintiff's counsel was able to obtain the mental health records one day before the ALJ's decision. He then forwarded them to the Commissioner approximately two weeks later. *See e.g.*, Tr. 496. The records confirm that plaintiff *did* receive treatment from a mental health professional during the relevant period. Moreover, Dr. Murphy's evaluation strongly indicates that plaintiff's mental impairments had more than a minimal effect on her ability to perform work-related activities.

The foregoing post-ALJ decision evidence constitutes part of the instant record – provided that it is new, material and related to the period before the ALJ's decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. §§ 404.970(b) & 416.1470.[11] There is little question that the additional evidence meets the applicable criteria. The mental health treatment records are certainly new – the ALJ noted their absence in his decision. The records are material because the ALJ premised his assessment of plaintiff's mental impairments on the supposed lack of treatment by a mental health professional. Moreover, it is manifest that the records are relevant to the time period at issue.

Finally, although the Appeals Council acknowledged the new records, it simply stated, in conclusory fashion, that they did not provide a basis for changing the ALJ's decision. (Tr. 2). While the Appeals Council is not obliged to explain the basis for its decision, this court does not discern any conceivable grounds for discounting the significance of the new evidence, which clearly undermines the rationale for the ALJ's step two conclusion, and, in turn, his assessment

---

[11] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia, Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra; Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

of the effects of plaintiff's mental impairments.

### III.    Steps Four and Five

Because the foundation for the ALJ's step four, and alternative step five, decision was premised upon an RFC that is not supported by substantial evidence, the court further finds that the ALJ's ultimate conclusion that plaintiff is not disabled is likewise not supported by substantial evidence.  Remand is required.[12]

<u>**Conclusion**</u>

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[12]  The court need not consider plaintiff's additional arguments.  These issues may be addressed upon remand.

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 21st day of July 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

19